ESTATE OF NICK P. STAVRAKIS, DECEASED, THE FIRST NATIONAL BANK OF EAST CHICAGO, INDIANA AND WANDA STAVRAKIS, CO-ADMINISTRATORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Stavrakis v. Commissioner
Docket No. 7539-89
United States Tax Court
T.C. Memo 1992-229; 1992 Tax Ct. Memo LEXIS 252; 63 T.C.M. (CCH) 2796; April 20, 1992, Filed *252 Decision will be entered under Rule 155. Morris A. Sunkel, for petitioner. Russell D. Pinkerton, for respondent. RUWE
RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $ 157,872.05. After concessions, the sole issue for decision is whether residential real property located at 704 Bayshore Drive, Tarpon Springs, Florida, is included in decedent's gross estate under section 2036(a). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner is the Estate of Nick P. Stavrakis, Deceased. The First National Bank of East Chicago, Indiana, and Wanda Stavrakis are the co-administrators of *253 the estate. The domiciliary estate is being administered by the Lake Circuit Court of Lake County, Indiana. Nick P. Stavrakis (decedent) died on October 26, 1984. Decedent was formerly married to Wanda Stavrakis. This marriage produced two children: Stephen P. Stavrakis (born July 21, 1965) and Phillip N. Stavrakis (born January 31, 1968). On October 25, 1968, decedent and Wanda Stavrakis were divorced. On March 16, 1972, decedent received legal custody of his two children. Sometime in 1972, decedent's two children moved in with decedent's sister, Falya Stavrakis (Falya), at her residence located at 755 Sunset Drive in Tarpon Springs, Florida. Decedent and Falya had an oral agreement whereby decedent's then minor children would reside with Falya, and she would provide care for them. Decedent paid the expenses incurred in connection with raising the children while they lived with Falya at the house on Sunset Drive, and all the money transferred from the decedent during this period was strictly for the children's needs. The residence on Sunset Drive was titled in Falya's name, and she made the mortgage payments on this house. Decedent did not pay Falya for the use of the *254 residence at 755 Sunset Drive. After decedent's children moved in with Falya, it was determined that the house on Sunset Drive was not large enough. In 1975, Falya found a house located at 704 Bayshore Drive in Tarpon Springs, Florida, that she wanted to buy. However, she could not obtain financing for its purchase because she still owned the house on Sunset Drive on which she had an unpaid mortgage loan. In order to facilitate the financing of the Bayshore Drive house, decedent entered into a written contract to purchase the Bayshore Drive house. Decedent agreed to personally assume the existing loan on the house and to supply approximately $ 21,000 of the required cash payment from his own funds. Falya agreed to repay the $ 21,000 cash advance to decedent when she was able to. The purchase contract was dated August 13, 1975. The contract required the purchaser to pay $ 5,000 earnest money, assume the seller's existing mortgage (which had an outstanding balance of approximately $ 21,400), and agree to pay $ 26,000 to the seller upon closing. Decedent filed an application to assume the existing mortgage loan with the First Federal Savings and Loan Association of Tarpon Springs, *255 Florida (First Federal), and his application was approved on September 9, 1975. The purchase was completed in September 1975. The source of funds for the purchase consisted of the mortgage loan in the approximate amount of $ 21,400, $ 21,000 advanced by decedent, $ 5,000 given to Falya by her brother Stephen, and $ 5,000 supplied by Falya. On September 26, 1975, a deed to 704 Bayshore Drive was executed from the seller to Falya. Decedent's children, Stephen and Phillip, resided with Falya in the Bayshore Drive house from 1975 until decedent's death in 1984. During this time, decedent made payments to Falya for the living expenses of his children based on actual expenditures made by Falya. She would inform decedent of these amounts during weekly telephone conversations. Sometimes, rather than reimburse Falya, the amount of Falya's expenditures for the children were considered as partial repayment to decedent for the $ 21,000 cash which he advanced to purchase the house. In 1977, Falya sold her house on Sunset Drive. She used the proceeds to repay part of the $ 21,000 which decedent had advanced for the purchase of the Bayshore Drive house. These payments, plus the amounts *256 which Falya spent to support decedent's children for which she was not reimbursed, resulted in complete repayment of the $ 21,000 which had been advanced by decedent. Falya did not keep any written accounting records of the actual expenses incurred by her in connection with the care of the children, nor did she keep any written records of decedent's reimbursement of such expenses. Falya kept no written records of amounts which she owed to decedent. Falya and decedent kept track of all these amounts orally through their weekly telephone conversations. Subsequent to the purchase of the Bayshore Drive house, and until his death, decedent made the monthly installment payments on the mortgage loan. Initially, these payments were approximately $ 200 per month and included interest and taxes. Decedent made these payments as consideration for the fact that his children were living in the Bayshore Drive house. It was understood that decedent would make these monthly payments only while his children continued to reside with Falya. Decedent told Falya that he wanted to make these payments directly to the lending institution because he wanted to deduct the taxes and interest. Decedent *257 claimed the interest and local taxes that he paid on the residence as deductions on his individual income tax returns. The Bayshore Drive house was always titled in Falya's name and, at all times, she considered herself to be the owner. Insurance, utilities, and repairs with respect to the Bayshore Drive house were paid by Falya. Subsequent to decedent's death, Falya made all monthly mortgage payments even though decedent's children continued to live with her. OPINION The sole issue for decision is whether the Bayshore Drive property is included in decedent's gross estate under section 2036(a). Section 2036 provides in pertinent part: (a) General Rule. -- The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death -- (1) the possession or enjoyment of, or the right to the income *258 from, the property, or (2) the right * * * to designate the persons who shall possess or enjoy the property * * *.
Section 2036(a) requires inclusion of the Bayshore Drive property in decedent's estate if the decedent retained either the right to actual possession or enjoyment of the property, or the right to designate the persons who shall possess or enjoy the property. Section 2036(a) applies even though the retained right is not legally enforceable. ; ; . Possession or enjoyment is considered retained by the donor of a gift when there is an express or implied agreement to that effect among the parties at the time of the transfer. ; ; . In the instant case, we find that there was no express agreement allowing decedent *259 to retain possession or enjoyment of the residence or the right to designate the persons who enjoyed or possessed the property. Moreover, it is beyond dispute that decedent did not personally retain actual possession of the residence. Thus, the narrow factual issue before us is whether an implied agreement existed under which decedent either retained enjoyment of the property or retained the right to designate the persons who enjoyed or possessed the property. In determining whether an implied agreement or understanding existed between the parties, we consider all facts and circumstances surrounding the transfer and subsequent use of the property. ; . Petitioner bears the burden of proving that an implied agreement or understanding between decedent and Falya did not exist at the time of the purchase of the residence. We find that petitioner has satisfied its burden of proof. The previously stated facts show that the property was titled in Falya's name and that she was the true purchaser and owner of the property. It is true that the *260 executory contract to buy the property and the loan settlement statement show decedent as the purchaser. However, Falya explained that this was a means by which financing could be obtained, since she did not qualify for a mortgage loan. She also explained that decedent advanced $ 21,000 to complete the purchase and that she agreed to, and subsequently did, repay him. We find Falya's explanation to be credible and consistent with her relationship with her brother. Decedent's payment of the installments due on the mortgage loan does not convince us that he retained rights to the property. Again, we believe that Falya has adequately explained this as consideration for the fact that decedent's two children were residing in Falya's house. Under these circumstances, the payment of approximately $ 200 per month is not exorbitant and is compatible with Falya's explanation. Based on Falya's testimony, we find that there was no implied agreement pursuant to which decedent retained possession or enjoyment of the Bayshore Drive house. We are not prepared to apply section 2036 based solely on the close family relationship that existed between Falya, the decedent, and his children. In the *261 intrafamily context, where the decedent has not retained exclusive possession of the property, we have consistently rejected the applicability of section 2036 based solely on the family relationship where there is no express or implied agreement. ; ; see ; USTC par. 12,506 (W.D. Tenn. 1967). We hold that the property located at 704 Bayshore Drive, Tarpon Springs, Florida, is not includable in decedent's gross estate pursuant to section 2036. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩